# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BRANDY BECKETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:17-cv-00937 |
| ) | Judge Aleta A. Trauger |
| **METROPOLITAN GOVERNMENT** ) | |
| **OF NASHVILLE AND DAVIDSON** ) | |
| **COUNTY, TAFFY "TIFFANY"** ) | |
| **MARSH, and CRAIG S. OTT,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

The Metropolitan Government of Nashville and Davidson County and Craig S. Ott (collectively, "Metro") have filed a Motion to Dismiss (Docket No. 22), to which Brandy Beckett has filed a Response (Docket No. 29). Taffy Marsh has also filed a Motion to Dismiss (Docket No. 25), to which Beckett has filed a Response (Docket No. 31), and Marsh has filed a Reply (Docket No. 38). Beckett then filed a Second Motion to Amend Complaint (Docket No. 30), to which Metro has filed a Response (Docket No. 32), and Beckett has filed a Reply (Docket No. 34). For the reasons herein, Metro's and Marsh's motions will be granted and Beckett's motion will be denied as futile.

## I. BACKGROUND & PROCEDURAL HISTORY[1]

On December 19, 2013, Beckett, who had been trained and hired to be a bus driver for the Metropolitan Nashville Public Schools ("MNPS"), was serving as a "bus monitor" on a bus the passengers of which included a special education student whom the court will refer to as

---

[1] The facts herein are taken primarily from the Amended Complaint. (Docket No. 21.) Except where otherwise noted, the facts are accepted as true for the purposes of the Motions to Dismiss.

"J.D." (Docket No. 21 ¶¶ 6–7, 13–14.) Although the full nature and extent of J.D.'s disability are not detailed in the Complaint, he is apparently unable to engage in spoken verbal communication and, instead, audibly expresses distress only by crying. During the bus ride, another child repeatedly struck and bit J.D. while Beckett looked elsewhere. (*Id.* ¶ 14(b)–(c).) J.D. cried but was otherwise unable to indicate that he was in danger or distress. After J.D. arrived home, still crying, his mother discovered bruises on his body from his mistreatment by the other child. (*Id.* ¶ 14(c)–(d).)

Unbeknownst to Beckett, MNPS had already been made aware of prior injuries that J.D. had suffered during earlier bus rides, and a safety plan had been put in place regarding J.D. that took the nature of his particular disabilities into account. (*Id.* ¶¶ 11–12.) As Beckett describes events, she took steps to obtain documentation that would have alerted her to the safety plan before the bus ride, but MNPS did not supply her with the materials she requested. (*Id.* ¶ 14(a)–(b).) Because Beckett was not made aware of the safety plan and because J.D. himself was unable to alert her to his predicament, Beckett did not perform any special monitoring or investigation that might have prevented or stopped the violence against him. (*Id.* ¶ 14(c).)

About a month later, on January 20, 2014, a manager informed Beckett that J.D. had been injured while she was acting as bus monitor and requested a written statement from her on the matter. Beckett provided a statement denying any wrongdoing. (*Id.* ¶ 17.) On February 12, 2014, Marsh, as MNPS's Executive Director of Transportation, recommended that Beckett be terminated. (*Id.* ¶ 20.) Beckett objected to the recommendation in a meeting with Ott, MNPS's Executive Director of Human Capital Operations, but Ott accepted and finalized the recommendation to terminate Beckett no later than March 31, 2014, the date of a letter from Ott to Beckett informing her of his determination. (*Id.* ¶¶ 22–23.)

In addition to recommending Beckett's termination, Marsh "caused a complaint to be filed with the Tennessee Child Abuse Hotline" (*Id.* ¶ 20), also known as the "DCS hotline," in reference to the state's Department of Children's Services. *See Medley v. State*, No. M2010-01181-CCA-R3-PC, 2012 WL 12932521, at *2 (Tenn. Crim. App. July 16, 2012). DCS is required by statute to "be capable of receiving and investigating reports of child abuse twenty-four (24) hours a day, seven (7) days a week." Tenn. Code Ann. § 37-1-406(a). When the agency receives such a complaint, it is required to conduct a thorough investigation. Tenn. Code Ann. § 37-1-406(a), (d). Accordingly, DCS initiated an investigation into Marsh's allegations against Beckett with regard to J.D.[2] (Docket No. 21 ¶ 20.) As part of that investigation, a DCS investigator interviewed Beckett, who informed the investigator that she had not been given the necessary documentation alerting her to J.D.'s communication impairment. (*Id.* ¶ 22.)

On May 16, 2014, a DCS case manager sent Beckett a letter informing her that she had been "identified as a person who committed child abuse or child neglect" and explaining that she had ten days to challenge the determination. (Docket No. 1-6.) Beckett reports suffering severe depression, anxiety, and despair upon learning that she had been labeled a perpetrator of child abuse or neglect and feared that the determination would limit her ability to participate in her own young children's school activities. (Docket No. 21 ¶ 27.) Beckett filed a timely Request for Case File Review with DCS. (Docket No. 1-7.) An administrative hearing on Beckett's challenge was held on May 20, 2015. (Docket No. 1-8.) On June 29, 2015, the administrative judge issued an initial order upholding DCS's determination. (Docket No. 1-10 at 13.)

---

[2] For reasons that are unclear to the court, both Beckett and Metro attribute this investigation to the Tennessee Department of Human Services. (Docket No. 21 ¶ 20; Docket No. 23 at 9.) Documents attached to Beckett's original Complaint, however, leave little doubt that, as Marsh correctly points out (Docket No. 26 at 1 n.1), DCS was the investigating agency. (*See* Docket Nos. 1-6 through -9.)

One effect of DCS's designation of Beckett as a perpetrator of child abuse or neglect was that she qualified for inclusion on a Tennessee Department of Health ("DOH") registry of individuals determined to have perpetrated abuse or other wrongdoing against vulnerable persons. (Docket No. 1-11 at 5:19–22.) Tennessee Code Annotated § 68-11-1001(a) directs the DOH to "establish and maintain a registry containing the names of any persons who have been determined by Tennessee government agencies or any state or federal court or any administrative bodies to have abused, neglected, misappropriated or exploited the property of vulnerable individuals." State agencies, licensees, and contractors are required to consult the perpetrator registry before allowing a prospective employee or volunteer to provide services to minors or other vulnerable persons, as defined by the statute. *See* Tenn. Code Ann. §§ 68-11-1002(8)(A), -1004(a).

Beckett filed a Petition for Judicial Review in Davidson County Chancery Court pursuant to Tennessee's Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. (Docket No. 1-11.) She asked for DCS's determination to be set aside and for her name not to be placed on the DOH registry. (*Id.* at 5:19–22, 11:6–18.) On January 30, 2017, Chancellor Claudia Bonnyman announced findings of fact and conclusions of law in Beckett's favor. (Docket No. 1-11.) Chancellor Bonnyman found that, "[i]f [Beckett] had seen the safety plan[,] she would have known of previous incidents of injury to J.D. and could have prevented the injury occurring on her watch," but that there was "merely a glimmer of proof that [Beckett] saw or even knew of the . . . plan." (*Id.* at 16:18–19, 18:12–15.) Chancellor Bonnyman noted, in particular, that Marsh had testified that a copy of J.D.'s safety plan had been placed on his bus seat, but both eyewitness and video evidence suggested otherwise. (*Id.* at 28:19–25.) Chancellor Bonnyman found that another key fact to which Marsh had testified—that MNPS's driver manual required a

4

bus monitor to sit in the back or middle of the bus, not in the front as Beckett had—was also contradicted by documentary evidence, namely the manual itself. (*Id.* at 16:20–25.) On February 28, 2017, the Chancery Court entered a Final Judgment providing that "the decision of the Administrative Law Judge is hereby reversed in its entirety and the case is remanded to the agency to dismiss its proceeding against the petitioner[,] to include removing her from any status as a perpetrator of child neglect and remove her from the registry for persons with the status of perpetrator." (*Id.* at 1.)

On June 12, 2017, Beckett filed a Complaint in this court, alleging that Metro and Marsh violated 42 U.S.C. §§ 1983, 1985, and 1988 through their handling of the allegation against her. (Docket No. 1 ¶ 45.) Following a Motion to Dismiss by Metro (Docket No. 16), Beckett filed a Motion to Amend (Docket No. 19), which the court granted (Docket No. 20). Beckett filed an Amended Complaint that included new factual allegations and also pled a new claim, against Marsh, for common law malicious prosecution under state law. (Docket No. 21 ¶ 53.) In the Amended Complaint, Beckett characterizes her § 1983 claim as based on the defendants' deprivation of her "property, liberty and equal protection interest[s] in her job and to be free from being wrongfully condemned as a substantiated child abuser." (*Id.* ¶ 38.)

Metro and Marsh filed new Motions to Dismiss (Docket Nos. 22 & 25), and Beckett again moved to amend her Complaint, this time "to include the allegation with respect to her procedural due process claim that she lacks an adequate remedy at law with respect to her pre-termination hearing, because there are no state remedies." (Docket No. 30 at 1.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### B. Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend,

courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## III. ANALYSIS

### A. Timeliness

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). The applicable limitations period in Tennessee is one year. Tenn. Code Ann. § 28-3-104(a); *see Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016). Metro and Marsh argue that Beckett's § 1983 claims are time-barred because she brought her complaint more than one year after her causes of action accrued. Beckett responds that her claims are timely either because they did not accrue until the conclusion of the state chancery court proceedings or because the limitations period was tolled under the doctrine of equitable estoppel.

#### *1. Date of Accrual*

"Although the applicable time period is borrowed from state law, the 'date on which the statute of limitations begins to run in a § 1983 action is a question of federal law.'" *Howell*, 655 F. App'x at 351 (quoting *Eidson*, 510 F.3d at 635). Under federal law, the limitations period

7

ordinarily begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* That is, the cause of action accrues upon the occurrence of the event that "should have alerted the typical lay person to protect his or her right." *Id.* (quoting *Kuhnle Bros.*, 103 F.3d at 520). At that point, the plaintiff has a "complete and present cause of action" such that she may "file suit and obtain relief." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Before the court can determine when Beckett's claims accrued, it must first determine the nature of the constitutional injuries she has alleged. Beckett first pleads a claim based on the unconstitutional deprivation of her property right in her continued public employment—a theory not uncommon in § 1983 cases. *See, e.g.*, *Crawford v. Benzie-Leelanau Dist. Health Dep't Bd. of Health*, 636 F. App'x 261, 266–67 (6th Cir. 2016). Beckett also, however, alleges a more hazily defined unconstitutional deprivation based on DCS's now-overturned designation of her as a perpetrator of child abuse or neglect and her inclusion on the DOH registry. Inclusion on a registry of perpetrators of unlawful acts may, depending on the attendant consequences, implicate any number of constitutional interests or protections. *See Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *14–20 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, J.) (discussing various constitutional issues related to aspects of sexual offender registration scheme). Although Beckett alleges some harms associated with her DCS designation, the Amended Complaint remains somewhat ambiguous with regard to what specific, constitutionally cognizable interests Beckett seeks to vindicate in that regard. For the purpose of the statute of limitations analysis, then, the court will consider the full parcel of injuries Beckett has tied to the DCS determination—reputational, psychological, and professional.

Beckett became aware that MNPS had ended her employment no later than March 31, 2014, significantly more than a year before she brought suit. (*Id.* ¶¶ 22–23.) There is, moreover, no basis for holding that the subsequent DCS and chancery court proceedings would have delayed the accrual of any claim based on that termination. Although the DCS-related proceedings arose from the same underlying facts as Beckett's firing, they were concerned not with her job as an MNPS bus driver, which had already come to an end, but with whether Beckett would be designated a perpetrator of child abuse or neglect going forward. Beckett has identified no law suggesting that accrual would be delayed by such unrelated proceedings simply because they were premised upon the same facts as her termination. Accordingly, this aspect of Beckett's claims accrued on March 31, 2014.

Similarly, Beckett should have been aware of any injuries arising out of her designation as a perpetrator of child abuse or neglect no later than—and arguably significantly before—June 2015, when DCS's determination was administratively upheld. Under the ordinary rule for accrual of a § 1983 claim, then, her claim accrued more than one year before she brought suit. Beckett responds by suggesting that the court should, instead, calculate the date of accrual for this aspect of her claims under the special rule applied to § 1983 claims based on malicious criminal prosecutions. In such cases, a claim does not accrue until the termination of the underlying criminal proceeding. *Fox v. DeSoto*, 489 F.3d 227, 233–34 (6th Cir. 2007); *Dallas v. Holmes*, 137 F. App'x 746, 751 (6th Cir. 2005) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–90 (1994) *Dunn v. Tennessee*, 697 F.2d 121, 127 (6th Cir. 1987)). Beckett suggests that, by analogy, her cause of action did not accrue until the conclusion of the chancery court proceedings reviewing DCS's determination.

Neither the chancery court case nor the DCS administrative proceeding, however, was criminal in nature, and Beckett has identified no authority that would extend the rule for malicious criminal prosecutions to cases based solely on a civil designation or inclusion on a registry. To the contrary, when the Sixth Circuit faced a similar argument in *Printup v. Director, Ohio Department of Job and Family Services*, the court concluded that, because the plaintiff teacher's inclusion on a child abuse registry was not criminal in nature, her claim was subject to the ordinary rule for accrual of a § 1983 claim. 654 F. App'x 781, 790–91 (6th Cir. 2016). Beckett's claim based on her DCS designation, therefore, accrued when a typical lay person would have realized that she had been deprived of the relevant interest, not when her state challenge was exhausted. *Cf. Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 755 (6th Cir. 2015) (noting that "42 U.S.C. § 1983 . . . does not require that a plaintiff exhaust state remedies before filing in federal court"). In this case, that date occurred more than one year before she brought suit.

### *2. Equitable Estoppel*

Beckett argues next that the statute of limitations for her claims was tolled by the doctrine of equitable estoppel. In Tennessee, "the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001); *Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998)). In order to invoke equitable estoppel, "the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have

10

known, would induce the plaintiff to delay filing suit." *Id.* (citing *Fahrner*, 48 S.W.3d at 145; *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)).

Beckett suggests that she is entitled to equitable estoppel in light of Marsh's allegedly false testimony regarding whether Beckett received J.D.'s safety plan and whether Beckett was forbidden, as a bus monitor, from sitting at the front of the bus. Both of those assertions, however, are ones that Beckett knew or reasonably should have known were false from her own experience. Indeed, by Beckett's own allegations, she always maintained that the accusations against her were baseless and acted accordingly. Marsh's alleged dishonesty, therefore, could not have induced Beckett not to bring suit. A bare allegation of dishonesty is not enough to entitle a plaintiff to equitable estoppel, if the dishonesty was not itself responsible for the plaintiff's delay in filing. Accordingly, Beckett cannot rely on equitable estoppel, and her § 1983 claims are untimely.

## B. Effect of Proposed Amendment

Beckett, who has not provided a proposed Second Amended Complaint, asks the court to permit her to amend the Complaint yet again "to include the allegation with respect to her procedural due process claim that she lacks an adequate remedy at law with respect to her pre-termination hearing, because there are no state remedies." (Docket No. 30 at 1.) Because the addition of this allegation would not defeat the untimeliness for which Beckett's claims must be dismissed, her Second Motion to Amend Complaint is futile and will be denied.

## C. State Malicious Prosecution Claim

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over related state law claims if the court "has dismissed all claims over which it has original jurisdiction." "The district court should consider such factors as comity, judicial

economy, convenience, and fairness in deciding whether to exercise supplemental jurisdiction over pendent state law claims, as well as the avoidance of unnecessarily deciding state law." *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009) (citing *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620–21 (6th Cir. 1999)). If the balance of these factors indicates that a case properly belongs in state court, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As a general matter, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007); *Hankins v. The Gap., Inc.*, 84 F.3d 797, 803 (6th Cir. 1996); *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon*, 465 F.3d at 728 (quotation marks & citation omitted). Accordingly, there is a "strong presumption" against the exercise of supplemental jurisdiction once all federal claims have been dismissed. *Packard v. Farmers Inc. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011).

The balance of factors in this case militates strongly in favor of allowing a Tennessee state court to adjudicate Beckett's claim for common law malicious prosecution against Marsh. Shorn of the federal constitutional considerations that Beckett has failed to raise in a timely manner, this case is fundamentally about the state law rights, duties, and immunities of the various state and local agencies and personnel charged with administering the state's chosen system for identifying, reporting, investigating, and memorializing child abuse allegations.

Beckett has identified no issues of fairness or judicial economy that would overcome the presumption that such issues should be decided on the state level.

The court notes that Marsh has conceded, in her briefing for this case, that Beckett's common law cause of action for malicious prosecution "did not accrue until the conclusion of the Chancery Court proceedings." (Docket No. 38 at 3 n.1.) Based on the excerpts from the record provided to this court and the representations of Beckett's counsel, it appears that final judgment in those proceedings was entered on February 28, 2017. (Docket No. 1-11 at 2; Docket No. 29 at 3.) Beckett, therefore, appears to be within the one-year statute of limitations to file suit for malicious prosecution. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A). The court will dismiss the common law malicious prosecution claim against Marsh without prejudice, leaving Beckett free to pursue whatever relief, if any, is available in state court.

## IV. CONCLUSION

For the foregoing reasons, Metro's Motion to Dismiss (Docket No. 22) and Marsh's Motion to Dismiss (Docket No. 25) will be granted. Beckett's Motion to Amend (Docket No. 30) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge